Alexander W. Kramer, J.
The defendant stands charged with 21 alleged violations of the Code of the Town of Islip. Each violation embraced section 32.19 of article III of said code. The 21 alleged violations spanned several months. The first date of alleged violation (IS-TO-496/75) was May 24, 1974. The last date of alleged violation (IS-TO-536/75) was September 29, 1974.
Many of the salient facts are undisputed. The premises in question are situate in the Bay Shore Garbage District No. 1 in the Town of Islip. The defendant, Pia Rotundi, became the owner of the premises 429 E. Main Street in 1970 as the result of the death of her husband, the prior owner. Pia Rotundi is a lady some 66 years of age. She has not, during her period of ownership, taken an active part in the management of the operation. 429 E. Main Street is an apartment complex containing 104 apartments or units.
Until May, 1974 garbage removal was effected by the owners thru private collectors. Prior to that time disputes between the owners and/or management and the Town of Islip had been festering. The former contended that, because of the property’s inclusion in the Bay Shore Garbage District No. 1, the municipality should be responsible for the removal of *249 rubbish, etc. The latter contended that the use of dumpsters and other variable factors brought the operation into violation of the rules and regulations which related to the removal of garbage and refuse in the Bay Shore Garbage District and that in consequence thereof the removal became the problem of management.
Finally, in May, 1974, the dumpsters (some seven in number and situate in various positions upon the property) became filled to overflowing. The town’s investigators made numerous visits to the property. The 21 incidents were noted. These proceedings were instituted.
The pertinent provisions of the code provide:
"Sec. 32-1 Declarations of intent. It is hereby declared and found that litter carelessly deposited in the Town of Islip is the cause of civic disgrace; that litter is a health, fire and safety hazard; that an all out litter control campaign can result in substantial savings to taxpayers of the Town of Islip; that litter is a matter affecting the public interest and consequently should be subject to supervision and administrative control for the purpose of safeguarding the public health, safety and general welfare of the people of the Town of Islip.” "Sec. 32-2 Certain words and phrases defined. For the purposes of this ordinance the following terms, phrases, words and their derivations shall have the meaning given herein * * *
"Litter — Is 'garbage’, 'refuse’ and 'rubbish’ * * * and all other waste material which, if thrown or deposited as herein prohibited, tends to create a danger to public health, safety and welfare or creates unsightliness.”
"Sec. 32-19 Owner to maintain private premises free of litter. The owner or person in control of any private property shall at all times maintain the premises free of litter; provided, however, that this section shall not prohibit the storage of litter in authorized private receptacles for collection.”
The interdictions set forth fall well within the purview of the town’s police power.
The acts charged in the various informations; the status shown by the exhibits offered on behalf of the town reflect a violation — or a series of violations — of the sections of the code in question. Defendant’s age, the fact that she was an absentee landlord do not per se exculpate her from the liability thusly imposed.
*250 However, counsel has advanced a myriad of contentions as to why the defendant should be found not guilty on all charges.
In addition to the institution of these proceedings now before the court for its consideration, other legal entanglements have ensued.
The defendant has a proceeding pending in the Supreme Court of Suffolk County [Rotundi v Town of Islip, Index No. 11756/74.] Multifaceted relief is sought therein, inter alia,— an order enjoining the town from proceeding with various prosecutions then pending in this court, the District Court of Suffolk County.
In discussing that feature of the relief sought, Mr. Justice Bracken in his decision dated July 15, 1975 observed: "Rotundi has not established to the satisfaction of this Court that the above criteria have been met and accordingly the issues in the pending multiple charges of the alleged past violations by Rotundi are left for determination by the District Court of Suffolk County. Toomey v Neenan, supra. Accordingly, the relief sought by Rotundi to enjoin the Town from continuing the pending prosecutions in the District Court of Suffolk County is denied.”
Other charges alleging violations of the Suffolk County Sanitary code were instituted. They were subsequently dismissed by another Judge of this court "in the interest of justice” on or about July 16, 1975.
The defendant asks for a dismissal of these 21 charges contending:
1. That the People have failed to establish that the premises in question were not in an incorporated area, citing section 130 of the Town Law in support thereof.
2. That there has been a pre-emption of the regulatory area by both the State of New York and the County of Suffolk.
3. That subdivision 9 of section 198 of the Town Law imposes a duty upon the town to collect garbage, refuse, etc.
These contentions will be considered seriatim.

Contention Number 1

Subdivision 15 of section 130 of the Town Law authorized the Town Board’s actions by providing: "Promotion of public welfare. Promoting the health, safety, morals or general welfare of the community, including the protection and preserva *251 tion of the property of the town and of its inhabitants, and of peace and good order, the benefit of trade and all other matter related thereto, insofar as the same shall not be inconsistent with existing law.”
Section 132 of the Town Law provides that any rule, regulation or ordinance of a town shall be effective and operative only in that portion of such town outside of an incorporated village, etc.
It was not a condition precedent to prosecution for the town to establish the location of the premises in question outside of the confines of an incorporated village or city. Any contention to the contrary would properly be the predicate of an affirmative defense.

Contention Number 2

Counsel for the defendant has alluded — in a general sort of way — to the fact that there are both a New York Sanitary Code and a Suffolk County Sanitary Code. Ergo — any ordinance enacted by the Town of Islip containing subject matter within the purview thereof would be interdicted because of the pre-emption by both the county and the State.
County Court Judge Murov, while a member of this Bench, had occasion to deal with the same problem in People v Conte (64 Misc 2d 573). In that case the Town of Babylon had attempted to deal with performing waitresses within the confines of that political subdivision. The Babylon ordinance forbade certain acts by such waitresses in places of public assembly, etc. Sections of the New York State Penal Law permitted similar acts as an exception "in a play, exhibition, show or entertainment” (p 575). The court quite properly found an inconsistency.
The burden of demonstrating any comparable inconsistency was upon the defendant. She has failed in that respect. This court, therefore, is constrained to honor the presumed regularity of the ordinance under attack.

Contention Number 3

Subdivision 9 of section 198 of the Town Law authorized the Town Board to establish the Bay Shore Garbage District No. 1. Paragraph (d) further authorized the board to "adopt from time to time ordinances, rules and regulations for the collection of garbage, ashes, rubbish” (emphasis supplied).
*252 In conjunction with the creation of the above-mentioned garbage district a contract was entered into with a private carter. Said contract defined and delineated certain procedures therein set forth.
The reasonableness of those procedures is presently in contention in the Supreme Court action, supra. The determination of that issue will resolve the rights between the defendant and the town as to what the town should do by way of garbage removal — if anything — and what damages this defendant may recover in that action, if any. It will not have any direct bearing on whether or not the defendant violated the antilittering ordinance. At best such contention is raised in justification of a fait accompli — not as a raison d’etre.
Finally, the defendant argues that these charges should be dismissed by the court "in the furtherance of justice.” This position is rooted in CPL 170.40. The pertinent portion thereof provides that "such dismissal is required as a matter of judicial discretion by the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such accusatory instrument or count would constitute or result in injustice.”
Defendant questions the applicability of the restrictions in the contract between the town and the carter. Reasonableness is the key to that phase. The answer thereto is evolving in the Supreme Court action. Defendant’s damages, if any, will be determined therein. But, to repeat an observation earlier made, that stance cannot per se justify acts by the defendant which would otherwise have been a violation of the code. The defendant in proceeding as she (or her representatives) did assumed the risk of prosecution.
Nor is this court persuaded by the ruling in the proceedings under the Suffolk County Sanitary Code. It is significant to note that those matters had been adjourned from time to time to July 16, 1975. On July 15, 1975 Mr. Justice Bracken rendered a decision in the Supreme Court matter. On July 16, 1975 the Assistant District Attorney who had been assigned to prosecute the Suffolk County Sanitary Code violations moved to dismiss them "in the interest of justice”. Reliance was placed upon Mr. Justice Bracken’s decision rendered only the day before. Reliance was also placed upon the contention that the code violations had been pending for more than one year; that the defendant would have been accorded the opportunity to ask for an adjournment in contemplation of dismissal; and *253 that sufficient time had run whereby such dismissal would have become effective by the time of disposition.
It seems to this court that inasmuch as defendant’s civil rights with the town have been fully observed and preserved; that inasmuch as the dismissal of the charges under the code afforded the defendant relief from a conviction or prosecution that might have resulted in an injustice, the wheel should stop there. The fact that the acts attributable to the defendant brought into play an invasion of public welfare should begin to surface. The defendant has had all the consideration shown her to which she may reasonably lay claim. It is now time that heed be given to the rights of the public.
For the foregoing reasons, this court is constrained to find the defendant guilty of all charges. She shall appear before the undersigned at the First District Court on December 5, 1975 at 10:30 a.m. for the purpose of sentence.