OPINION OF THE COURT
Victor J. Orgera, J.
This motion for summary judgment in favor of defendants pursuant to CPLR 3212 on the grounds that the causes of action alleged in the complaint have no merit and that there are no triable issues of fact is granted.
The plaintiff is an incorporated village containing approximately 1,300 acres and 872 residents. On or about August 18, 1979, plaintiff was notified by letter that the defendant NYC/ Long Island County Service Group, a unit of the New York State Office of Mental Retardation and Developmental Disabilities, intended, pursuant to section 41.34 of the Mental Hygiene Law, to establish a community residence for six mentally retarded and developmentally disabled persons at a site in the Village of Old Field. That section affords a municipality 40 days after receipt of the notice to approve the site recommended, suggest alternative sites, or object to the establishment of the proposed facility because it would "result in such a concentration of community residential facilities for the mentally disabled * * * that the nature and character of * * * the municipality would be substantially altered.” (Mental Hygiene Law, § 41.34 subd [b], par [1], cl [C].) The village objected to the proposed facility and a hearing to resolve the issue was held on October 26, 1979. The commissioner’s decision, incorporated in a letter to the Village Mayor dated December 13, 1979, advised the Mayor that the village’s objections were not sustained. ’
The complaint claims that section 41.34 is an unconstitu *124 tional delegation of powers by the Legislature; is void because of vagueness; is violative of the plaintiffs right to due process and equal protection of the laws and that it disregards the village’s zoning ordinances. Plaintiff seeks a judgment declaring the rights of the parties and that section 41.34 be declared unconstitutional as it was applied to the plaintiff.
At the outset, it is the opinion of this court that the plaintiff lacks standing to bring this action. As was said by the Court of Appeals in Matter of Abrams v New York City Tr. Auth. (39 NY2d 990, 992) "it is one thing to have standing to correct clear illegality of official action and quite another to have standing in order to interpose litigating plaintiffs and the courts into the management and operation of public enterprises.” The same court, more recently in a case which sought relief against a State agency charged with responsibility for the care and treatment of the mentally ill discharged into the community, went even further, holding that such type of cases are not justiciable for the reason that "there are questions of broad legislative and administrative policy beyond the scope of judicial correction.” (Jones v Beame, 45 NY2d 402, 408.)[1]
Assuming, arguendo, for the purpose of this motion, that the plaintiff has standing and that the matter is justiciable, the plaintiffs challenges to section 41.34 are without merit.
Certain broad principles of constitutional law pertinent here are clear and well settled but bear repeating: A legislative enactment carries with it a strong presumption of constitutionality and is presumed to be supported by facts known to the Legislature (Defiance Milk Prods. Co. v Du Mond, 309 NY 537); this presumption can be overcome only by proof persuasive beyond a reasonable doubt (Hotel Dorset Co. v Trust for Cultural Resources of City of N. Y., 46 NY2d 358); courts may not concern themselves with the wisdom or expediency of the legislation (Thompson v Wallin, 301 NY 476); nor may courts substitute their judgment for that of the Legislature (Lincoln Bldg. Assoc. v Barr, 1 NY2d 413). Indeed, it is only as a last resort that the courts will strike down a legislative enactment on the ground that it is unconstitutional (Matter of Ahern v South Buffalo Ry. Co., 303 NY 545).
The plaintiff contends that section 41.34 of the Mental *125 Hygiene Law is an unconstitutional delegation of power because it lacks standards and criteria for its application. In support it cites Matter of Sullivan County Harness Racing Assn. v Glasser (30 NY2d 269) and Matter of City of Utica v Water Pollution Control Bd. (5 NY2d 164). Its reliance upon those cases, which were article 78 proceedings, is misplaced. The holdings in those cases are contrary to that suggested by plaintiff. In Sullivan County, the court found that a statute empowering the State Harness Racing Commission to issue licenses if "the public interest, convenience or necessity will be served thereby and a proper case for the issuance of such license is shown consistent with the purposes of this act and the best interests of racing generally” incorporated sufficient standards and constituted a proper delegation of power by the Legislature. While the plaintiff correctly sets forth the general principle enunciated in City of Utica (supra, p 168) that "[t]he Legislature may constitutionally confer discretion upon an administrative agency only if it limits the field in which that discretion is to operate and provides standards to govern its exercise”, it omits the two sentences immediately following, to wit: "That does not, however, mean that a precise or specific formula must be furnished in a field 'where flexibility and the adaptation of the [legislative] policy to infinitely variable conditions constitute the essence of the program.’ * * * It is enough if the Legislature lays down 'an intelligible principle’, specifying the standards or guides in as detailed a fashion as is reasonably practicable in the light of the complexities of the particular area to be regulated.” (Citations omitted.)
In upholding the constitutionality of section 2800 of the Public Health Law, the Court of Appeals held that "to provide for the protection and promotion of the health of the inhabitants of the state” was a sufficient and adequate standard. (Matter of Levine v Whalen, 39 NY2d 510, 516.) The court then went on to cite numerous cases, both Federal and New York, where statutory standards, such as "public interest, convenience, or necessity”, "public peace, safety and good order”, "public health, safety and general welfare”, were upheld as being sufficiently specific and clear. More recently, in Nicholas v Kahn (47 NY2d 24, 31), the court stated that while the Legislature cannot delegate its lawmaking power to an administrative agency "it is not necessary that the Legislature supply administrative officials with rigid formulas in fields where flexibility in the adaptation of the legislative *126 policy to infinitely variable conditions constitute the very essence of the programs. Rather, the standards prescribed by the Legislature are to be read in light of the conditions in which they are to be applied”.
The statute in question which expresses the Legislature’s intent "to meet the needs of the mentally disabled * * * by providing, wherever possible, that such persons remain in normal community settings, receiving such treatment, care, rehabilitation and education, as may be appropriate to each individual” (Legislative findings and intent, L 1978, ch 468, § 1), among other things, defines a "community residential facility for the disabled”, sets forth procedures to air community objections and specifies the factors to be considered by the commissioner in making his decision. Thus, it more than meets constitutionally accepted standards.[2] A history of the enactment and purposes of section 41.34 is set forth in Zubli v Community Mainstreaming Assoc. (102 Misc 2d 320).[3] While the issues in Zubli are different from here, the court in Zubli considered the statute’s constitutionality in a broad context and held it to be constitutional.
Although the plaintiff alleges that it was denied due process and equal protection of the laws of the United States and of New York State, it has not specified in what manner these rights were violated. There are serious questions as to whether the concepts of due process and equal protection of the laws apply to municipal corporations, which are creatures of the State (Robertson v Zimmerman, 268 NY 52). It was not until the enactment of section 41.34 that a municipality was given the right to object to a State proposal for the location of a community residential facility. Assuming, by reason of section 41.34 that the concepts do apply, the plaintiff’s constitutional attack still fails. The meaning and scope of the phrase "due process of law” cannot be defined with precision. It does not guarantee any particular form or method of procedure, but a hearing or an opportunity to be heard to protect rights is an essential (Matter of Coates, 9 NY2d 242). The statute here provides for a hearing and a judicial review *127 of the commissioner’s decision.[4] As to the equal protection challenge, the plaintiff does not even suggest that the statute is without a rational basis or differentiates in a palpably arbitrary manner (Gleason v Gleason, 26 NY2d 28). Accordingly, the statute in question meets both the tests of due process and equal protection of the law.
As to plaintiff’s remaining contention, it has been consistently held that where a local ordinance conflicts with and hinders State public policy, the local ordinance is void (Abbott House v Village of Tarrytown, 34 AD2d 821 [home for neglected children]; Group House of Port Washington v Board of Zoning Appeals of Town of North Hempstead, 55 AD2d 636 [group home]). The police power of the State has never been questioned when it dealt with a matter of public health and welfare and it should not be limited or whittled away by local objection (Adler v Deegan, 251 NY 467). The test is that if the subject is a matter of substantial State concern, the Legislature may act even though there may be countervailing local concerns (Robertson v Zimmerman, 268 NY 52, supra). This is predicated upon broad principles of sovereignty which require that a State or one of its agencies in performing a governmental function be free of local control (County of Westchester v Village of Mamaroneck, 22 AD2d 143, affd 16 NY2d 940).
As the plaintiff in opposing this motion has not raised any issues of fact which require a trial, and whereas all questions of law have been resolved in favor of the defendants, the defendants are entitled to summary judgment. Accordingly, the court declares that section 41.34 of the Mental Hygiene Law is constitutional in general and as applied to the plaintiff; that the defendants may establish a community residential facility at John Hollow Road in the Village of Old Field to accommodate six retarded adults and that village ordinances which would prohibit such use are void so far as they apply to a use pursuant to section 41.34.

. Interestingly, then Chief Judge Breitel refers to the statute now under consideration by this court as dealing with matters he regards as nonjusticiable.

. Ironically, one of the aims of the statute according to the Governor’s message in approving chapter 468 of the Laws of 1978 (Mental Hygiene Law, § 41.34) was to discourage "frivolous legal challenges that have needlessly delayed proper establishment of such facilities in the past”.

. Affd 74 AD2d 624.

. Plaintiff in this case has, in fact, brought an article 78 proceeding to review the commissioner’s determination, which is now sub judice.